**FRANKLIN et al. v. CITY OF GALVESTON et al.**

No. 12483.

Court of Civil Appeals of Texas. Galveston.

March 26, 1953.

Rehearing Denied April 16, 1953.

1. Art. 4001, V.A.C.S.

owned by appellee, City of Galveston. It was alleged that Jerry Franklin's death was brought about by the negligence of the defendant, City of Galveston, its agents and employees.

Texas Employers Insurance Association, who carried compensation insurance for appellee, was made a party defendant to the action in order that it might assert any claim it had in a recovery by plaintiffs.

On December 20, 1949, the City of Galveston owned and operated an export grain elevator with railroad trackage, warehouses, sheds, docks, wharves and berthing space used in the operation of its elevator, and in the shipment of grain therefrom by rail and ocean-going vessels. Pier 27 was approximately 2' 9" lower than Pier 28 and was reached by an inclined ramp connecting piers 27 and 28. Jerry Franklin was employed as a longshoreman by Southern Stevedoring Company, Inc., on December 20, 1949, to assist in the trimming of grain in the holds of the S. S. Ames Victory, which was docked alongside of Pier 27 for the purpose of receiving grain from the elevator. At about 7:00 p. m. on December 20, 1949, Jerry Franklin slipped while going down the ramp between Pier 28 and Pier 27 on the way to work and as a result lost his balance and fell overboard and was drowned.

Burris, Benton, Baker & Zwiener, F. F. Benton, Eugene N. Catlett, of Houston, for appellant Lola Mae Franklin et al.

Royston & Rayzor and C. A. Brown, of Galveston, for appellant Texas Employers Ins. Ass'n.

Williams & Thornton, Bryan F. Williams, of Galveston, for appellee City of Galveston.

MONTEITH, Chief Justice.

This suit was brought by Lola Mae Franklin, individually and as guardian of her five minor children, for the recovery of damages from appellee, City of Galveston, for the death of Jerry Franklin, who was drowned in the channel of Galveston Bay, into which he fell from a ramp constituting a part of the waterfront docks

In answer to special issues submitted, the jury found, among other things, that the city failed to keep the ramp between Piers 27 and 28 at the time of the occasion in question free of foreign substances, and that such failure was negligence and a proximate cause of the death of Jerry Franklin. The jury found that the city, its agents, and employees knew that there were foreign substances on the ramp, and that its agents and employees had such knowledge and sufficient time before Jerry Franklin's death to have removed the foreign substance. The jury found that the city had not failed to light the ramp and that the city was not negligent in providing life saving equipment on the docks, or in not providing a railing on the ramp and that the city was not negligent in failing to provide said ramp with proper cleats

and that the ramp on the occasion in question was not in a reasonably safe condition for the use of Franklin and others similarly employed, and that the failure of defendants, its agents, servants and employees to maintain the ramp in a reasonably safe condition was negligence and that such negligence was a proximate cause of the deceased's death; that the agents, servants and employees of the city had such knowledge for sufficient time before his death to have placed said ramp in a reasonably safe condition for the use of Franklin and other employees; that the ramp at the time of and immediately before Franklin fell was in a slippery condition and that they had failed to warn the deceased, Jerry Franklin, of that fact. The jury found that Franklin kept a proper lookout and that he was not guilty of negligence in proceeding down the ramp at the time that he did. The jury found that Jerry Franklin knew and appreciated the danger attendant upon proceeding down the wharf and ramp and that he voluntarily selected the route down the wharf and ramp that he did; that the lack of a railing on the ramp was as well known to Jerry Franklin as to the City of Galveston; that he was familiar with the lack of a railing on the water side of the wharf and ramp in question and that at the time and on the occasion in question the ramp and wharf were similar to the condition which usually existed under the same and similar circumstances. The jury found that it was open and obvious to Jerry Franklin that the condition of the wharf and ramp in question was similar to that condition which usually existed under similar circumstances. The jury found that the death of Jerry Franklin was not due to an unavoidable accident, and the ramp on the occasion in question was similar to the condition which usually existed and that it was open and obvious to him and that at the time of the accident was similar to the condition which usually existed and that it was as well known to Jerry Franklin as to the defendants. The jury fixed the amount of plaintiffs' damages at $22,000.

Jerry Franklin, a colored man, 40 years of age, had been working as a longshore-man about the Galveston Wharves about three years. He had worked on grain boats in that area since 1943. A number of witnesses testified that there was an accumulation of grain on the ramp but that the conditions as they existed on the night of Franklin's death were no different from any other time.

On the afternoon of the day on which Franklin was later hired, the Stevedoring Company had caused some bales of bags to be placed on the docks, but a passageway was left open over Pier 27. The record shows that in proceeding from the upper dock to the ramp they walked over the bales of bags.

The case of Galveston, H. & H. R. Co. v. McLain, Tex.Civ.App., 218 S.W. 65, 67, writ of error refused, was an appeal from a judgment rendered on a verdict in favor of plaintiff against the defendant railroad company for injuries suffered by the plaintiff while he was an invitee upon a side track owned by the defendant, running along Mechanic Street in the City of Galveston past the warehouse of Stolz and Peterson, by whom the plaintiff was employed. At the time plaintiff was injured, an empty car was being moved in the customary manner by pushing it, by some of the employees including plaintiff, from a position between the rails at the hind end of the car. While the car was being pushed, the plaintiff's pants leg was caught by a sliver or splinter in one of the rails which held him until a loaded car coming down the track struck and injured him. The track and rails where the accident occurred were in a dilapidated condition, in that the rails were splintered with slivers sticking out from their sides, and the track was uneven from high and low places in it to such an extent that it was a hard matter to move cars over it. This Court, after ruling that the plaintiff was an invitee upon the track of defendant, and, despite the verdict in his favor, was shown by his own evidence to have had full knowledge of the defective condition of the track prior to his injury, held that the verdict in his favor and the judgment rendered thereon, must be set aside, and Justice Graves, speaking for the Court,

said in part: "No case has been cited holding a recovery to an invitee permissible when the condition of the premises causing his injury was fully known to him, and we apprehend that none can be. * * *"

The case of Texas & P. Ry. Co. v. Howell, Tex.Civ.App., 117 S.W.2d 857, 859, error dismissed, was an action for damages for injuries suffered by the plaintiff when his foot went through the planking of a loading platform maintained by defendant railroad company where he was engaged as an employee of the shipper in loading cotton. On a verdict awarding him damages, judgment was entered. by the trial court. On appeal it was held that the judgment in favor of plaintiff must be set aside because if the hole through which his foot slipped was one of which he was aware, he could not recover because he had knowledge of its existence; and that if it was one which had been recently brought about because of a rotten condition of the planking, the evidence was not sufficient to show that the defendant was negligent in failing to detect and remedy the defective condition. In its opinion the Court said, "If the whole of plaintiff's testimony should be construed to the effect that prior to his injury there was a hole in defendant's platform, apparently made by the wheels of a truck breaking through the platform, and that plaintiff had noticed the hole for sometime prior to his injury, then, we think, as contended by defendant, recovery by plaintiff is precluded for the reason that 'The duty to keep premises safe for invitees applies only to defects * * * that are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal or necessary risks attendant upon use of the premises and the owner * * * is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care.' * * *."

The case of Hausman Packing Co. v. Badwey, Tex.Civ.App., 147 S.W.2d 856, 858, writ denied, was an action by a plaintiff, who was a restaurant operator, for injuries to him caused by his slipping from a meat truck of the defendant into which he had gone to select meat to be purchased by him for use in his restaurant and into which he had previously gone many times for that purpose. A judgment rendered in his favor on a jury verdict was set aside and judgment rendered against him by the Court of Civil Appeals. In the opinion it was said:

"The rule is well settled that the owner of premises is not required to keep them safe for invitees in so far as open, obvious and known defects or conditions are concerned.

* * * * * *

"Appellee had been climbing in and out of this truck for many months; he knew, or by the exercise of ordinary care should have known, that the floor was defective and slippery, that there was no handhold at the rear of the truck and that there was only one step between the floor of the truck and the ground, a distance of 33 inches. Being charged with full knowledge of these obvious defects, which were not hidden in any way, he cannot recover for personal injuries caused by such defects or conditions."

In the case of Fort Worth & D. C. Ry. Co. v. Hambright, Tex.Civ.App., 130 S.W. 2d 436, 439, error dismissed, judgment correct, it was held that it was error to refuse to submit an issue as to whether the injured plaintiff knew of the slippery condition due to an accumulation of snow and ice in front of defendant's warehouse door upon which plaintiff slipped and was injured, because, if the plaintiff, who was an invitee upon defendant's premises, knew of the condition, or if it would have been open and obvious to him in the exercise of ordinary care, no recovery could be allowed him. In the course of the opinion the court said, "It is well established in this and many other jurisdictions that the mere ownership of lands or buildings does not render the owner liable for injuries that may be sustained by those who enter thereon. He is not an insurer of such persons even though

he invites them to enter his premises. Furthermore, the doctrine of res ipsa loquitur does not apply to such an owner when it is shown only that an injury has been sustained by those who are rightfully upon his premises. The only condition under which such an owner is liable to those whom he invites upon his premises are when dangerous and unsafe instrumentalities or conditions exist and are known to him and not known to such invited persons and they are injured by such instrumentalities or conditions. It follows that if a person is injured under such circumstances and the instrumentality or condition by which he was injured is as obvious or well known to him as it is to the owner of the premises, no liability exists for such injury and the law will allow him no recovery therefor. * * *."

The rule announced in the Hambright case, supra, is followed in the cases of Shawver v. American Ry. Express Co., Tex. Civ.App., 236 S.W. 800; and Crump v. Hellams, Tex.Civ.App., 41 S.W.2d 288.

In the Hambright case, supra, the court further said, " * * * We have held that the question of appellee's knowledge of the conditions at and around the warehouse door was not sufficiently shown to make of it a question of law so that the court would have been warranted in giving to the jury a peremptory instruction in favor of appellant. What we have said in discussing that phase of the case shows, however, that such knowledge on the part of appellee was an ultimate question of fact. * * *."

In the case of Beeville Cotton Oil Co. v. Sells, Tex.Civ.App. San Antonio, 84 S.W. 2d 575, it was held that a truck driver coming on premises of the defendant oil company as an invitee, could not recover for injuries suffered by him as the result of his foot slipping into an open cottonseed conveyor box, because the construction of the conveyor was well known to him, and the danger of having his foot slip into it was open and obvious.

In the case of Stamford Oil Mill Co. v. Barnes, 103 Tex. 409, 128 S.W. 375, 31 L.R.A.,N.S., 1218, it was held that the defendant Oil Mill Company was not liable for injuries suffered on its premises by a 12 year old boy, who had accompanied his elder brother onto the premises for the purpose of purchasing cottonseed for their father, and who, while in the seed room where he had gone to fill sacks with cottonseed, got his foot caught in a conveyor, the presence of which he was aware, and the danger of getting his foot caught in it he knew.

In the case of A. C. Burton Co., Inc., v. Stasny, 223 S.W.2d 310, writ denied, this Court held that where plaintiff recovered judgment for injuries suffered by him as the result of his having walked into a plate glass window on the defendant's premises where he had gone to purchase parts for his automobile and after making purchases he, in undertaking to leave the premises, walked into a plate glass window instead of going through the door where he had entered. The jury found that the defendant was negligent in failing to maintain a guard rail across the window and in failing to place markings thereon which proximately caused the injuries to the plaintiff, who, at the time he was injured, was walking with his head down, but was not negligent in doing so. A judgment in his favor on that verdict was reversed and rendered against him by this Court on the ground that the defendant owed him no duty to safeguard him against the open and obvious condition of the premises where the plate glass window was located.

In the case of Camp v. J. H. Kirkpatrick Co., Tex.Civ.App., 250 S.W.2d 413, 417, it was held that, " * * * Actually, an invitee's knowledge of danger or the existence of facts from which he ought to have knowledge is relevant on the issue of the invitee's own contributory negligence."

The rule seems to be that the owner of premises is under no duty to guard the invitee against conditions of the premises which the latter, in the exercise of proper care for his own safety, would recognize as constituting a hazard to him. Hence, the invitee is not entitled to such protection because, under the law, he does not have a right to it. Of course, in coming on the premises he, in a sense, assumes

risk of injury from the hazard which may be there, but the owner is not relieved from liability for an injury resulting to the invitee from the hazard because the latter assumed the risk of being so injured, but the nonliability of the owner for the injury exists because he was under no duty to protect the invitee against it.

The case of Blanks v. Southland Hotel, Inc., 149 Tex. 139, 229 S.W.2d 357, involved a dangerous stairway furnished by the hotel to its guest as the only means of egress and ingress to and from his room. He was under compulsion of using it for that purpose and could not properly be viewed as having voluntarily taken the risk of using it.

In this case Franklin was under no such compulsion to descend the wharf and ramp in the manner, and at the place, he did, as he could easily and safely have walked on the bales of bags, as did one of the other witnesses.

The rule above announced is followed in the cases of City of El Paso v. Mendoza et ux., Tex.Civ.App., 191 S.W.2d 102; City of San Antonio v. Porter, 24 Tex.Civ.App. 444, 59 S.W. 922; Gulf, Colorado & Santa Fe Railway Company v. Gasscamp, 69 Tex. 545, 7 S.W. 227; Henwood v. Gilliam, Tex. Civ.App., 207 S.W.2d 904; Houston City St. Ry. Co. v. Medlenka, 17 Tex.Civ.App. 621, 43 S.W. 1028; Mosheuvel v. District of Columbia, 191 U.S. 247, 24 S.Ct. 57, 48 L. Ed. 170; Shuford v. City of Dallas, 144 Tex. 342, 190 S.W.2d 721; and Missouri, K. & T. Ry. Co. of Texas v. Cardwell, Tex. Civ.App., 187 S.W. 1073. The above-cited cases were all suits for injuries suffered by travelers on public highways or on passageways. That travelers on public roads are not there as invitees, and their rights are not determined by the same rules that govern owners of premises and invitees thereon, was pointed out by Justice Graves in the Galveston, H. & H. R. Co. v. McLain, supra.

The case of Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 433, 20 A.L.R.2d 853, was an action to recover damages for personal injuries suffered by the plaintiff as the result of a fall down a shaft over the top of which a tarpaulin was stretched without timbers or boards beneath it. In that case the court said, "The jury found that the fact that the shaft was not securely covered with timbers was concealed from Haskell Smith by the tarpaulin covering. Smith testified to this effect, and there is therefore support for the jury's finding. In this situation, the condition of the shaft was a hidden or concealed danger. * * *"

The case of McAfee v. Travis Gas Corporation, 137 Tex. 314, 153 S.W.2d 442, was an action for injuries suffered by the plaintiff in an explosion of gas escaping from a leaking pipe line upon his premises, where plaintiff had gone for the purpose of pointing out the leaks in the line to a servant of the defendant who struck a match and thus caused the explosion. McAfee, the plaintiff, knew that gas was escaping from the pipe before, and when he went on the premises, and the condition of the premises brought about by escaping gas was a cause of his injuries which, however, were directly caused by the affirmative act of the defendant's servant in striking the match. That that would be done, certainly was not something known to, or open and obvious to, the plaintiff when he entered upon the premises.

Under Special Issues Nos. 35, 36, 40, 41 and 42, the jury was asked to find whether or not at the time and on the occasion in question Jerry Franklin knew and appreciated the dangers attendant upon proceeding down the wharf and ramp at the place that he did. The jury found that he knew and appreciated the dangers.

Under Special Issue No. 36, the jury was asked whether it found that at the time and on the occasion in question Jerry Franklin voluntarily selected the route down the wharf and ramp that he did. The jury found that he did. The jury was asked whether the condition of the wharf and ramp on that night was similar to the condition which usually existed under the same or similar circumstances and whether or not that was open and obvious to him and as well known to him as it was to the City of Galveston.

They were, we think, all material, ultimate issues raised by the evidence and were all properly submitted.

We have carefully considered all points of error presented by the appellants, and finding no reversible error therein, the judgment of the court is in all things affirmed.